SARAH MORS *et al.* Appellees, *vs.* CLARISSA PETERSON, Appellant.

*Opinion filed February 21, 1914.*

1. UNDUE INFLUENCE—*extent to which mental condition may be considered.* Evidence of the feeble physical and mental condition of the grantor, due to old age and infirmity, even though not sufficient to establish want of capacity to make the deed, may be considered as strengthening the presumption of undue influence arising from the intimate fiduciary relation between grantor and grantee.

2. SAME—*courts of equity set no bounds upon circumstances from which a fiduciary relation may spring.* In equity a fiduciary relation includes not only legal relations, such as guardian and ward, attorney and client, principal and agent, and the like, but extends also to every case in which such relation exists in fact and in which there is confidence reposed on one side and resulting domination and influence on the other.

3. SAME—*equity will closely scrutinize transaction between parties occupying a fiduciary relation.* Where a confidential or fiduciary relation between parties is established, courts of equity will scrutinize closely any transaction or contract between them whereby the dominant party secures any profit or advantage at the expense of the other.

4. SAME—*transactions between parties occupying a fiduciary relation are presumptively fraudulent.* Before a court of equity will permit a transaction or contract between parties occupying a fiduciary relation to stand, the dominant party, who has profited thereby, must overcome the presumption of fraud by clear and convincing proof showing that he has exercised good faith and has not betrayed the confidence reposed in him.

5. SAME—*when it is not error to set aside deed unconditionally.* If the evidence fails to overcome the presumption of fraud in the execution of a deed to valuable property for no money consideration to the dominant party it is not error to set aside the deed unconditionally, even though it contains a provision that the grantee will take care of the grantor as long as the latter lives and provide her with a home and board, where the evidence shows that the grantee was not relying upon the deed for compensation for such services but upon a contract, under which she had been taking care of the grantor at a fixed amount per week.

APPEAL from the Circuit Court of Fayette county; the Hon. ALBERT M. ROSE, Judge, presiding.

Albert & Matheny, and B. W. Henry, for appellant.

F. M. Guinn, and Gilbert & Hensen, for appellees.

Mr. Justice Vickers delivered the opinion of the court:

Sarah Mors and numerous other persons claiming to be heirs and devisees of Elizabeth Spruill filed their bill against Clarissa Peterson and others, as defendants, in the circuit court of Fayette county, for the purpose of setting aside a deed executed by Mrs. Spruill to Clarissa Peterson on August 23, 1911, conveying to Mrs. Peterson 190 acres of land, estimated to be worth about $50 per acre. The bill alleged fraud, undue influence and want of mental capacity as grounds for the relief sought. Clarissa Peterson filed an answer to the bill, in which she denied all of the charges contained therein upon which complainants predicate their right to relief. The cause was heard upon testimony submitted in open court and a decree was rendered setting aside the deed, to reverse which Mrs. Peterson has prosecuted this appeal.

The errors assigned question the several findings of the court below upon which the decree canceling the deed rests.

Elizabeth Spruill died April 23, 1912, at the age of eighty years. She had been married but her husband had been dead about twenty years. She never had any children. In addition to the real estate conveyed to appellant she had some notes and other personal property. Her business affairs had been managed during her widowhood first by John A. Bingham, who acted as her attorney in fact to loan her money and to look after the leasing and collecting of rents from her real estate. Afterwards, in 1902, the deceased appointed J. J. Brown as her attorney in fact to look after her business affairs generally. Brown continued to represent the deceased until her death. The business transacted by him for her consisted mainly of making loans of her funds, collecting the interest and receiving rents and

paying the same out according to the directions of Mrs. Spruill. The actual leasing of the real estate was done by Mrs. Spruill in person. Brown was occasionally called upon to draw up leases in accordance with contracts previously made by her. The evidence shows that a few years before her death she had a new house built on her farm, and that she personally planned the building and let the contracts for the construction of the house. During the last ten years of Mrs. Spruill's life she lived at the home of the appellant, who was her niece. The evidence is that Brown paid appellant for taking care of Mrs. Spruill, first at the rate of $3 per week, but the compensation was increased from time to time as Mrs. Spruill grew more feeble, and during the last three years of her life the compensation was at the rate of $10 per week. About nine years before her death Mrs. Spruill suffered an injury to her hip, which thereafter made it quite difficult for her to walk. The evidence shows that Mrs. Spruill gradually declined, both physically and mentally, after her injury, and that her condition was such that she required, during the last years of her life, constant attendance both day and night, and appellant personally rendered this service to her. The aggregate amount paid appellant for keeping Mrs. Spruill was about $2500. During the last few years of her life her condition was one of helpless dependence on others for the supply of her wants. It was appellant's duty, under her contract, to minister to Mrs. Spruill's comfort and necessities, and there is no complaint that she did not fully discharge her duty under her contract. The evidence further shows that appellant not only looked after the personal wants of Mrs. Spruill but she also attended to business affairs for her as well. On March 11, 1912, appellant wrote Brown a letter, in which she demanded pay for taking care of Mrs. Spruill or that Brown turn over the "papers, notes and mortgages, as I have to do all of the business; I will not bother you longer with her affairs; I have paid all of

the taxes and other expenses; now I want the money you owe me; if you cannot do the business without trouble you can stop right now." From this letter and other evidence in the record it is apparent that the appellant was not merely devoting herself to the personal wants of her patient but was actively concerning herself with her affairs generally.

The evidence as to the mental condition of Mrs. Spruill during the last few years of her life is conflicting. It can not be said that the weight of the evidence shows that her mental powers were more impaired than would ordinarily be expected in one of her age and condition of health. The evidence on this point shows that she had the physical and mental weakness that are usually incident to old age. Her mental condition is proper to be considered as strengthening the inference of undue influence which the law draws from an established fiduciary relation. The constant and intimate association of appellant with this feeble and helpless old lady for the last ten years of her life gives rise to an irresistible conclusion that there was trust and confidence on the one hand and influence and domination on the other. While the bill sets out all the circumstances connected with the execution of the deed and alleges undue influence and mental incapacity and prays for a cancellation of the deed, it is not, strictly speaking, a bill, as appellant's counsel appear to treat it, for the rescission of a contract on the ground of mental incapacity of the party to enter into it. The bill alleges a state of facts which are fully established by the proof, which show that a fiduciary relation existed between these parties; that while such relation existed the deed in question was executed without any adequate consideration; that by said deed appellant acquired title to real estate worth between $9000 and $10,000, and the bill calls on the appellant to rebut the presumption which the law draws from the fiduciary relation established, and show, by clear and convincing proof, that she acted

with good faith and did not betray the confidence reposed in her. The decree below canceling this deed is merely an adjudication that appellant has wholly failed to remove the suspicions which necessarily grow out of the nature of the transaction and the relation of the parties.

Courts of equity have refused to set any bounds to the circumstances out of which a fiduciary relation may spring. It not only includes all legal relations, such as guardian and ward, attorney and client, principal and agent, and the like, but it extends to every possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side and resulting domination and influence on the other. (*Beach* v. *Wilton,* 244 Ill. 413.) It ·is not necessary that the relation and duties involved be legal. They may be either moral, social, domestic, or merely personal. (*Roby* v. *Colehour,* 135 Ill. 300; *Walker* v. *Shepard,* 210 id. 100.) When a confidential or fiduciary relation is established between parties, courts of equity scrutinize very closely any transaction or contract between the parties by which the dominant party secures any profit or advantage at the expense of the person under his influence. All transactions between parties in this relation are presumptively fraudulent and void, and before a court of equity will permit such contract to stand, the proof must be clear and convincing and satisfy the conscience of the chancellor that good faith has been exercised and that the confidence reposed in the beneficiary of the contract has not been betrayed by him. *Beach* v. *Wilton, supra,* and authorities there cited.

The circumstances connected with the execution of the deed in question, as disclosed by the evidence, are: Appellant called upon an attorney and had him prepare a deed. After having the deed written up, the appellant telephoned Sidney Bagley and asked him to come over to the house. Bagley was a justice of the peace. He went to appellant's house and after consulting with appellant a notary public

was called. The matter of executing the deed was discussed by appellant, Bagley and the notary public. The deceased was in another room. After the matter had been talked over among the three parties Bagley entered the sickroom where the old lady was and presented the deed to her and she made her mark, and thereupon Bagley placed a silver dollar in her hand, which had been given him a few minutes before by appellant. J. E. Keisling, the notary public, says that after the deed was executed it was read over to Mrs. Spruill, and Bagley says that he asked her, before she made her mark to the deed, if she wanted to give the land, or deed the land, to appellant, and was answered, "Yes." Thereupon the notary added his certificate of acknowledgment and the deed was handed to appellant. Before the execution of this deed Mrs. Spruill had made a will in which she disposed of all her property, including the land in controversy. By her will appellant was given 11/20ths of the estate and the balance was disposed of among other relatives.

When all of the circumstances surrounding this transaction are considered we can come to no other conclusion than that reached by the court below, that there was here an unusually intimate fiduciary relation existing between these parties, and that the conveyance to appellant of substantially all of the property that the deceased owned must be held to be the result of a violation of the confidence and trust reposed by this old lady in appellant. At all events, the evidence introduced on behalf of appellant fails to convince us, any more than it did the chancellor below, that this transaction is free from any suspicion of undue influence.

The deed contains a covenant on the part of appellant that she would take care of Mrs. Spruill as long as she lived and provide her with a good home, board, food, shelter and care during her life. Appellant contends that even though the court properly set aside the deed it was error

to set it aside unconditionally, without requiring the payment to appellant of reasonable compensation for taking care of the old lady from the time the deed was executed until her death. · The evidence shows that notwithstanding this covenant in the deed appellant continued to demand of Brown compensation for taking care of the old lady at the rate of $10 per week under her contract. Numerous letters written by appellant to Brown demanding money are in the record. The last of these was about two weeks before the death of Mrs. Spruill. · This evidence shows that appellant was relying on her contract for compensation for taking care of the deceased, and that she did not furnish her a home, board, food and shelter as a consideration for the conveyance. If appellant has any claim against the estate, under her contract with Brown, for compensation she has not been deprived of that by the decree in this case. There was no error in the decree in this respect.

There being no error in the decree of the circuit court of Fayette county it will be affirmed.          *Decree affirmed.*