In re Estate of John Jarmuth, Deceased.
Laura Heiby, Appellant, v. Minnie Reinberg et al.,
Appellees.

Gen. No. 43,707.

620

622

Opinion filed November 19, 1946.  Released for publication December 3, 1946.

GERALD T. WILEY, of Chicago, for appellant.

CUMMINGS & WYMAN, of Chicago, for appellees; AUSTIN L. WYMAN and KURT W. TEUTHORN, both of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Petitioner, Laura Heiby, appellant and cross-appellee, filed in the Probate court of Cook county the following verified "petition for citation to recover property and discover information":

"Your petitioner, Laura Heiby, respectfully represents:

"1.  That she is the daughter of John Jarmuth, deceased; that letters testamentary have heretofore, towit on August 5th, 1943, been duly issued to Minnie Reinberg, who is also a daughter of the deceased, and that said Minnie Reinberg has filed an inventory in said estate.

"2.  That for most of the time during the last two years before his death the deceased has lived with said Minnie Reinberg, the Executrix herein, and her husband John Reinberg; that during that time the de-

ceased was in failing health and the said Minnie Reinberg and John Reinberg transacted various items of business for said deceased and had access to the bank account and safety deposit box of the deceased.

"3. That upon information and belief this petitioner states that, at the time of the death of the deceased, Minnie Reinberg and John Reinberg were indebted to the deceased for a sum of money in excess of $25,000.00 and that said indebtedness was evidenced by a note of said Minnie Reinberg and John Reinberg which was in the safety deposit box of the deceased up to shortly before his death.

"4. That within six months before his death the deceased sold one of his pieces of property for a sum in excess of $9,000.00 and this petitioner, upon information and belief, states that Minnie Reinberg and or John Reinberg came into possession of the proceeds of said sale and have not accounted for same.

"5. That the deceased, at the time of his death, was the owner of a large block of stock in the Mortar Supplies Co. which stock this petitioner believes was in the possession of Minnie Reinberg and John Reinberg at the time of the death of the deceased.

"6. That the deceased is the owner of certain real estate located on Mozart St., Chicago, Cook County, Illinois.

"7. That none of the foregoing items have been inventoried by the said Minnie Reinberg, the executrix of said estate, and this petitioner believes that said Minnie Reinberg and John Reinberg have converted some or all of the personal property mentioned in paragraphs Nos. 3, 4 and 5 of this petition to their own use.

"8. That she believes that one Daniel P. Nagle of Chicago, Illinois has knowledge or information concerning property belonging to said estate which is needed to recover said property and which said Minnie Reinberg refuses to inventory.

"9. That in view of the foregoing allegations a guardian ad litem should be appointed by this Court to represent said estate.

"Wherefore, the undersigned prays that the said Minnie Reinberg, John Reinberg and Daniel P. Nagle may be cited to appear before this Court on a day. certain and compelled to answer such interrogatories as may be propounded to them, touching the matters and things hereinbefore set forth, and that the proper order of this Court be entered upon such examination if it be found that any or all of such property is the property of the estate of John Jarmuth, deceased, and to answer interrogatories put to them concerning knowledge or information withheld by them and needed to recover property by suit or otherwise, and that a guardian ad litem be appointed by this Court to represent said estate."

The Probate court entered a citation directed to Minnie Reinberg, John Reinberg and Daniel P. Nagle, directing them to appear in the Probate court, to answer the verified petition, to attend the hearing thereon, to submit to examination under oath, and to show cause why an order or judgment should not be entered against them as the case required. Although the citation order directed respondents to answer the verified petition the record does not show that any of them filed answers to the petition. Upon a hearing before the Probate court upon the citation order, an order was entered dismissing the petition and citation. An appeal was taken by petitioner to the Circuit court, and after a hearing *de novo* before the court the following order was entered:

"That John Reinberg was indebted to John Jarmuth, deceased, at the time of his death in the sum of $17,430.25, being the balance due on his note of $25,000.00, and that said Minnie Reinberg, Executrix of the estate of John Jarmuth, deceased, inventory the same in the estate of John Jarmuth, deceased, now

pending in the Probate Court of Cook County, Illinois.

"The Court further finds that the other items claimed by Laura Heiby in her petition for citation as belonging to the estate of John Jarmuth, deceased, were given to Minnie Reinberg by the said John Jarmuth during his lifetime and do not belong to said estate."

Petitioner appeals from that judgment order. Respondents Minnie Reinberg and John Reinberg have filed a cross-appeal praying that that part of the judgment order finding that respondent John Reinberg was indebted to John Jarmuth, deceased, in the sum of $17,430.25, and ordering Minnie Reinberg, as "Executor," to inventory the same in the estate of John Jarmuth be reversed.

Petitioner, Laura Heiby, contends that

"The Court erred in failing to require Minnie Reinberg to inventory all of the items recited in the Petition for Citation in the Estate of John Jarmuth, deceased.

"The Court erred in finding that said items were given to Minnie Reinberg by John Jarmuth during his life time and do not belong to said estate.

"The Court erred in failing to find that Minnie Reinberg, as well as John Reinberg, was indebted to John Jarmuth, deceased, at the time of his death, in the sum of $17,430.25, and failing to require said Minnie Reinberg, Executrix of the Estate of John Jarmuth, deceased, to inventory said indebtedness from her in said estate."

In a careful reading of the entire *record* in this case we find facts and circumstances that tend strongly to prove that Minnie Reinberg and her husband, John Reinberg, conspired to convert to their own use the assets of the estate of John Jarmuth. It is our opinion that the examination proceedings that followed the citation order were not prosecuted comprehensively and summarily, as the statute contemplates. The at-

torney who filed a brief for petitioner in this court took no part in the proceedings in the trial court.

Respondents Minnie Reinberg and John Reinberg contend that the order of the Circuit court, save the second paragraph thereof, wherein it was found that John Reinberg was indebted to the estate in the sum of $17,430.25, should be affirmed, but that as to that item the judgment order should be reversed. The theory of respondents is that under the law there was a burden upon petitioner to establish at the outset of the proceedings a fiduciary relationship between the testator, John Jarmuth, and Minnie Reinberg by proof so strong, unequivocal and unmistakable as to lead to but one conclusion; that petitioner failed to success-fully sustain that burden and therefore they were not obliged to prove that the items mentioned in paragraphs 4, 5 and 6 of the petition were given to Minnie Reinberg by her father and were valid gifts *inter vivos.* They concede that if petitioner had successfully proved the fiduciary relationship ''then the burden of proof would be upon us'' (the Reinbergs) to defend the alleged gifts to them from John Jarmuth, ''to show, and presumably by disinterested testimony throughout, the complete fairness of the transaction attacked.'' Respondents entirely misinterpret the purpose of the statutory examination to discover and recover assets of an estate.

The instant petition was filed under par. 335, sec. 183 [Jones Ill. Stats. Ann. 110.432] of the Administration Act. Par. 337, sec. 185 [Jones Ill. Stats. Ann. 110.434] of the Act provides:

''*At the hearing the court may examine the respondent on oath whether or not the petitioner has proved the matters alleged in the petition, may hear the evidence offered by any party,* may determine all questions of title, claims of adverse title, and the right of property, and may enter such orders and judgment as the case requires. If the respondent refuses to

answer proper questions put to him or refuses to obey the court's order or judgment to deliver any personal property or, if converted, its proceeds or value, or books of account, papers, or evidences of debt or title to lands, the court may commit him to jail until he complies with the order or judgment of the court or is discharged by due course of law or the court may enforce its order or judgment by execution against the respondent's real and personal property. The court may tax the costs of the proceeding against the respondent and enter judgment therefor against him.''

Par. 339, sec. 187 [Jones Ill. Stats. Ann. 110.436], provides:

''If the executor, administrator, guardian, or conservator is the respondent, the court may appoint a guardian ad litem to appear and represent the estate. The court may permit the guardian ad litem to prosecute or defend an appeal.'' No guardian *ad litem* was appointed in the instant proceeding although the petition prayed that one be appointed and the case was clearly one where the protection of the estate required such appointment.

Par. 337, sec. 185, was ''intended to provide a comprehensive and summary means for the discovery and recovery of assets, or of their value if they have been converted. The proceeding is purely statutory and is neither at law nor in equity. It bears the equitable aspects of a bill of discovery, while at the same time providing for an optional jury as at law on demand of the parties, where questions arise concerning claims of adverse title or interest . . . .'' (*Keshner v. Keshner,* 376 Ill. 354, 359.)

While it is true that the citation order was entered upon the prayer of the petition, the examination proceedings that followed did not involve a law suit between petitioner and respondents. Sec. 185 of the Act was intended to provide a comprehensive and summary means for the discovery and recovery

of assets, or of their value if they have been converted, and the trial court controlled the proceedings and had full power to conduct the examination, and independently of the petitioner. *At the hearing, the trial court was given the power by the statute to hear evidence offered by any party.* We may state, however, that even if it were necessary for petitioner to prove, in the first instance, the fiduciary relationship between Minnie Reinberg and her father, she successfully sustained the burden.

John Jarmuth died June 8, 1943, leaving as his heirs at law his widow, Minnie Jarmuth, and two daughters, Minnie Reinberg and Laura Heiby, the petitioner. Jarmuth was about eighty-three years of age at the time of his death and had not been in good health for some time before that event. During the last eighteen months of his life he had been in a hospital upon several different occasions, but the record fails to show what ailments caused him to go there. Jarmuth's wife was aged and feeble-minded, and for that reason, probably, he went to live with Minnie Reinberg about a year and a half before he died, and he continued to live at her home until his death. Minnie Reinberg testified that for quite a few years before her father's death she took care of his affairs; that she took care of his business during all of the time that he lived with her; that her father had a safety deposit box in the First National Bank of Skokie, to which she had access; that she would go there to get papers for her father or to put papers in the box for him; that her father had a bank account in the First National Bank of Skokie and that in May, 1943, she was made a joint tenant of this account. Jarmuth owned 996 shares of the 1,000 shares of the Mortar Supplies Company that were outstanding. Minnie Reinberg was the secretary and treasurer of that company and she kept its records in her home.

The evidence, in our opinion, shows that a fiduciary and confidential relationship existed between Minnie Reinberg and her father and that she was a dominating factor in his affairs during the last few years of his life. Jarmuth's wife and his daughter Laura Heiby took no part in his business affairs. A paragraph in Jarmuth's will indicates that he considered his wife too feeble-minded to handle money.

██ ██ ". . . Courts of equity have refused to set any bounds to the circumstances out of which a fiduciary relation may spring. It includes all legal relations, such as attorney and client, principal and agent, guardian and ward, and the like, and also every case in which a fiduciary relation exists in fact, where confidence is reposed on one side and domination and influence result on the other. (*Mors v. Peterson,* 261 Ill. 532; *Kosakowski v. Bagdon,* 369 id. 252; *Beach v. Wilton,* 244 id. 413.) The relation need not be legal, but it may be either moral, social, domestic, or merely personal. (*Mors v. Peterson, supra; Roby v. Colehour,* 135 Ill. 300.) Transactions with a fiduciary are presumptively fraudulent, and will be stricken down unless he establishes their fairness by clear and convincing proof. *Mors v. Peterson, supra; Kosakowski v. Bagdon, supra.*" (*Seely v. Rowe,* 370 Ill. 336, 342.)

██ ". . . When a confidential or fiduciary relation is established between parties, courts of equity scrutinize very closely any transaction or contract between the parties by which the dominant party secures any profit or advantage at the expense of the person under his influence. All transactions between parties in this relation are presumptively fraudulent and void, and before a court of equity will permit such contract to stand, the proof must be clear and convincing and satisfy the conscience of the chancellor that good faith has been exercised and that the confidence reposed in the beneficiary of the contract has not been betrayed

by him. *Beach v. Wilton, supra* [244 Ill. 413], and authorities there cited." (*Mors v. Peterson,* 261 Ill. 532, 536.)

However, the trial court found that the items set up in paragraphs 4, 5 and 6 of the petition of Laura Heiby "were given to Minnie Reinberg by the said John Jarmuth during his lifetime and do not belong to said estate," and we must presume that the court intended by that finding to hold that the said items were valid gifts *inter vivos.* "The burden of proof of the gift is on the donee to prove all facts essential to a valid gift. The essential facts are the delivery of property by the donor to the donee with intent to pass the title, and the great weight of authority is that the proof to sustain the gift must be clear and convincing. (*Maxler v. Hawk,* 233 Pa. St. 316; *In re Bolin,* 136 N. Y. 177; *Grey v. Grey,* 47 id. 552; *Chambers v. McCreery,* 106 Fed. 364; 45 C. C. A. 322.) Mere possession by one claiming property as a gift, after death of the owner, is universally, we believe, held insufficient to prove a valid gift." (*Rothwell v. Taylor,* 303 Ill. 226, 230, 231.) The *Rothwell* case also holds (p. 232) that where the donor and donee live together, "Mere proof of delivery may be some evidence tending to show intent, but under the circumstances shown in this case all the authorities are that but little consideration can be given to it." In some of the States it is provided by statute that if the donor and donee reside together at the time of the gift; possession by the donee at their place of common residence is not a sufficient possession within the meaning of the statute. (See 28 C. J. p. 638.) Former Section 2414 of the Code of Virginia read as follows: "No gift of any goods or chattels shall be valid, unless by deed or will, or unless actual possession shall have come to and remained with the donee, or some person claiming under him. If the donor and donee reside together at the time of the gift; possession

at the place of their residence shall not be a sufficient possession within the meaning of this section." *The rule requiring gifts inter vivos to be established by clear and convincing evidence is especially applicable in cases where a confidential relationship existed between the parties.* (See *Estate of Williams v. Tuch,* 313 Ill. App. 230, 240.) In the instant case the burden was upon respondents to prove that the items in question were valid gifts *inter vivos, and the fiduciary and confidential relationship between Minnie Reinberg and her father is merely an additional reason why the proof of the alleged gifts inter vivos should be clear and convincing.* The claim of respondents that they were absolved from proving that the items in question were valid gifts *inter vivos* because petitioner failed to prove a fiduciary relationship between Minnie Reinberg and her father, is without the slightest merit in law or in fact. In spite of the fact that the examination that followed the citation order was not vigorously and skilfully prosecuted there are certain mountain peaks in the evidence that tend strongly to show that the Reinbergs' claim that Jarmuth made certain gifts *inter vivos* to Minnie Reinberg is not even an honest one.

On August 5, 1943, Minnie Reinberg filed in the Probate court of Cook county a *verified* petition presenting what purports to be a will of John Jarmuth for probate. The petition contains, *inter alia,* the following paragraph:

"The approximate value of the real and personal estate of decedent in this state is as follows:
"*Personal estate in the value of* $25,000.00
"Real Estate in the value of $ None
"The value of the whole estate of decedent does not exceed $25,000.00
"The estate of the decedent will be sufficient to discharge all claims against the estate."
(Italics ours.)

In considering the weight and effect that should be given to that part of the inventory that we have italicized it must be noted that this verified petition was filed by one who testified that for quite a few years before her father's death she took care of his business affairs, had access to his safety deposit box, and was a joint tenant of his bank account. On October 1, 1943, Minnie Reinberg, as executrix of the last will and testament of John Jarmuth, filed in the Probate court the following inventory in said estate:

"INVENTORY

"*Real Estate*

"None

"*Personal Estate*

"1.  Certificate No. 9 for 25 shares of capital stock of 5337–39 North Hoyne Avenue Building Corporation, issued in the name of John Jarmuth, dated February 10, 1934.

"DEEMED GOOD

"2.  Bond No. 13 Village of Wilmette Improvement, Series E, special assessment No. 195, dated November 15, 1927, due December 31, 1933, for $100.00, bearing interest at 6% per annum, payable annually; endorsements thereon showing unpaid balance now $20.00.
Interest coupons 5 and 6 attached.
Last interest paid July 31, 1940, at 5% per annum.

"DEEMED GOOD

"3.  Promissory note for $800.00, dated January 1, 1937, due two years after date, to the order of John Jarmuth, signed by Norman Jarmuth and Grace Jarmuth.

Endorsement thereon showing judgment entered for $1019.99 in the Municipal Court of Chicago on April 30, 1941.

"DEEMED DOUBTFUL

"4. Goods and chattels, as per bill of appraisement, $25.00

[Signed] "Minnie Reinberg
"As Executor of the Last Will and Testament of John Jarmuth, deceased."

After a careful consideration of all of the relevant facts and circumstances in the record we have found it difficult to escape the conclusion that when Minnie Reinberg filed the verified petition in the Probate court presenting the will of her father for probate she then intended to inventory as an asset of the estate a $25,000 note that she and her husband had executed and given to her father in payment of a $25,000 loan made to them by him, but that three months later she and her husband had decided not to inventory the $25,000 note as an asset of the estate and to file a false inventory that would show that her father left no estate of any real value. By that time the Reinbergs had decided, apparently, to claim that the promissory note for $25,000 had been partially discharged by payments made by them to Jarmuth and that later the note was given by Jarmuth to Minnie Reinberg, and that everything else of real value that Jarmuth possessed he had also given to Minnie Reinberg. The bold claim is also made by the Reinbergs that immediately after Jarmuth had executed his will and handed it to Reinbergs' attorney—who took it to his office—Jarmuth gave to Minnie Reinberg the 996 shares of stock that he owned in the Mortar Supplies Company and the mortgage that he held upon that company.

The will of Jarmuth, prepared, as we have heretofore stated, by the Reinbergs' attorney—who was also

a witness to the will—contains the following provisions:

"I, John Jarmuth, of Skokie, Illinois, being of sound and disposing mind and memory, do hereby make, publish and declare this my Last Will and Testament, hereby revoking all former wills by me made.

"First: I direct that all my just debts, funeral expenses, costs of administration of my estate, and any inheritance or estate taxes which may be assessed against my estate, or any share or interest therein, be first paid.

"Second: All the rest, residue and remainder of my estate, both real and personal wheresoever situated, I give, devise and bequeath to my daughter, Minnie Reinberg, and my son-in-law, John Reinberg, or the survivor of them, as Trustees under the following uses and trusts, namely:

"(a)  My said Trustees shall pay all expenses for the support, care and maintenance of my beloved wife, Minnie Jarmuth, so long as she shall live, including necessary medical and hospital expenses; and if my said wife, Minnie Jarmuth, shall, in the judgment of my said Trustees, be capable of handling money, they shall pay and turn over to her such funds as she may request and as they, in their discretion, may deem advisable. My said Trustees are hereby expressly authorized and directed to apply all or any required portion of the income of my estate for such purpose or purposes, and to use so much of the principal thereof as they, in their sole discretion, shall deem necessary.

"(b)  Upon the death of my beloved wife, Minnie Jarmuth, my said Trustees shall pay all necessary funeral and burial expenses.

"(c)  I am not certain how the title to my home at

5151 Oakton Street, Skokie, Illinois, is held. It is my desire, however, that any interest therein which I can by will devise shall be included in said trust and shall be sold within five (5) years after my death or within five (5) years after the death of my said wife, MINNIE JARMUTH, whichever date shall be the later, and that the proceeds of such sale shall be divided equally between and paid over to my beloved daughter, LAURA HEIBY, and my beloved daughter, MINNIE REINBERG, as their absolute property forever, and I hereby direct my said Trustees to do whatever can be done and shall be necessary to accomplish this purpose.

"(d) All the rest, residue and remainder of my estate, upon the death of my said wife, MINNIE JARMUTH, my Trustees shall pay over and distribute to my said daughter, MINNIE REINBERG, as her absolute property forever.

"(e) In the event of the death of my said daughter, LAURA HEIBY, before payment to her of any legacy in this will contained, said legacy shall lapse. In the event of the death of the said MINNIE REINBERG before payment to her of any legacy herein contained, such legacy shall be paid and distributed to her husband, JOHN REINBERG, or, in the event of his death, then to the said LAURA HEIBY.

"(f) *My Trustees shall be entitled to continue the business of the Mortar Supplies Company or any business owned or dominated by me at the time of my death, and to use any funds from either income or principal of my trust estate for the protection and preservation of the business of said company, and they shall have full discretion as to the manner of operation of said business and as to the*

*manner of calculating the net profits and the
net income thereof, as well as the net income
of my estate generally.* (Italics ours.)

"Third: In the event any beneficiary under this
my Last Will and Testament shall take any steps to
contest or oppose the probate of this will, said benefi-
ciary shall forfeit all right to participate in said estate,
and the share of the person so contesting the probate
hereof shall go to the remaining beneficiaries here-
under.

"Fourth: I am conveying, assigning, transferring
and turning over to my daughter, Minnie Reinberg,
certain properties, real and personal, which were here-
tofore conveyed, assigned, transferred or delivered to
me in trust for her or for the purpose of protecting
her interest therein.

"Fifth: I hereby nominate and appoint my daugh-
ter, Minnie Reinberg, to be Executor of this my Last
Will and Testament, hereby waiving all security on
her bond as such Executor. In the event of her death
or inability or refusal to act, I hereby nominate and
appoint John Reinberg as successor executor, and in
the event of the death of both the said John Reinberg
and Minnie Reinberg, or their resignation or inability
to act, as executors or as trustees hereunder, then I
hereby nominate and appoint Austin L. Wyman [also
an attorney who acted for the Reinbergs] as successor
executor and successor trustee, with all the powers
and authority herein granted to my first-named Exec-
utor and Trustees.

"Sixth: My Executor or successor executor and my
Trustees shall have full power and authority to settle,
compromise and compound any and all claims in favor
of or against my said estate without securing an order
of the Probate Court for that purpose, and it shall not
be the duty of any person dealing with my said estate
to look to the application of any moneys paid my said
Executor, successor executor or Trustees. In general,

my said Executor and successor executor and my said Trustees shall have all and singular the powers over my said estate which I might have and exercise if living.

"In Witness Whereof I have hereunto set my hand and seal to this my Last Will and Testament, all on this 18th day of February, A. D. 1942.

[Signed] "John Jarmuth (seal)"

In considering the provisions of the will it must be noted that the Reinbergs claim that on or before the date the will was executed Jarmuth had given to Minnie Reinberg practically all of the estate of which he was possessed. Her attorney testified that Dr. Keiser, who was also a witness to the will, assured him that Jarmuth had the mental capacity to sign the will and to execute stock transactions or gifts; that he read the will to Jarmuth very carefully and asked Jarmuth, "Is that what you want?" to which Jarmuth answered, "yes, that is what he wanted." The will shows that Jarmuth considered that at the time he executed the will he owned the business of the Mortar Supplies Company, that he was leaving a substantial estate, and that he was providing for his senile wife by putting his estate in trust, primarily, for her benefit. The will clearly rebuts the claim of the Reinbergs that Jarmuth gave his entire estate, including the stock in the Mortar Supplies Company, to Minnie Reinberg. In making this statement we have not forgotten that Reinbergs' attorney testified that after Jarmuth had signed and executed his will "John Reinberg and his wife came into the room, and the old man gave her, if I recall correctly, the stock certificates and the deed as a gift"; that at the same time Jarmuth gave the lawyer a power of attorney to transfer the said stock, but that he, the attorney, never made a transfer of the stock. The power of attorney does not name the party to whom the attorney was to transfer the stock. The examination of this attorney was of a perfunctory

nature. He was not called upon to explain why Jarmuth asserted ownership of the stock in his will and made it a part of the trust primarily created for the benefit of his wife if he intended to give the stock to Minnie Reinberg immediately after he executed his will. If the theory of fact of the Reinbergs presents the real situation that surrounded Jarmuth at the time that he made the will, and assuming that he was of sound mind at the time and that Minnie Reinberg's attorney read the will to him, then Jarmuth, in retaining in the will certain provisions, was perpetrating a cruel deception upon his aged, senile wife and his daughter Laura Heiby.

We will briefly refer to the other gifts which Minnie Reinberg claims were given to her by her father:

As to the $25,000 note item set up in paragraph 3 of the petition, Minnie Reinberg testified that her father gave her this note before he died. "Q. Did you ever pay that $25,000 back to your father? A. Not all of it. Q. How much did you pay back? A. Seventeen. Q. How? A. No, there is seventeen due on it. Q. You still owe $17,000 on it? A. That is right. Q. You didn't inventory this balance due your father either, did you? A. No, because he gave it to me before he died. Q. How did he give it to you? A. Well by a gift. Q. You mean—did he hand you anything or just tell you you did not owe him that any more? A. I think he gave me back the note, *but I don't know just where the note is now.* Q. You don't know whether he gave it back to you? A. Oh yes, I know he gave it back to me. Q. When? A. Oh, this was about a year and a half ago, I think. Q. A year and a half, that would place it before his first sickness in February, 1942? A. That is right. Q. He just handed you the note? A. Yes. Q. And says 'That is yours'? A. Yes, to cancel it. Q. Who was present at that time? A. My husband. Q. Just you and your husband and your father? A. Yes. . . .

Q. *Did he hand you the note, or did he hand that to your husband?* A. *I don't remember who he gave it to, either one of us."* She also testified that she and her husband made payments upon the note in different amounts "either $9,000—" (the answer was not completed); that they made the last payment in 1941 or 1942, "somewhere along there." The judgment order in the instant case finds that John Reinberg was indebted to Jarmuth at the time of the latter's death "in the sum of $17,430.25, being the balance due on *his* note of $25,000.00." Petitioner strenuously contends that in any event the order should have found that Minnie Reinberg was also indebted to the estate for any balance due upon the note. This contention is a meritorious one. Minnie Reinberg testified that *she* and her husband borrowed the $25,000 from her father and that *they* gave him a note for that amount; that the payments made upon the note were made by *her* and her husband, and that her father "gave us back the note." The testimony of Mrs. Brennwald, bookkeeper of Mortar Supplies Company, supports petitioner's position. Tested by Minnie Reinberg's testimony she, as well as her husband, owed Jarmuth whatever balance remained due upon the note. The record shows that the finding that John Reinberg, alone, owed the balance upon the note, is of no value to the estate. The law firm that represents respondents in the instant proceeding was kept busy defending creditors' suits against John Reinberg, and in one of these suits John and Minnie Reinberg in a verified answer stated that the actual value of the assets of John Reinberg "is nil," and that an offer of settlement which he had made "was made because at that time his friends and relatives, *to spare him the embarrassment and stigma of imprisonment,* offered and were willing to give him the sums offered in settlement; that said defendant then had and now has no security to offer persons willing to advance such sums, and that said sums were

offered to him as a matter of personal friendship and with no real hope of repayment, and with no security therefor.'' Respondents, in their assignment of cross-error in the instant case, contend that the evidence does not sustain the finding of the trial court that John Reinberg was indebted to the deceased at the time of his death in the sum of $17,430.25. This contention is without the slightest merit and respondents make but a feeble effort to sustain it. They state that there is considerable confusion as to the amount, if any, that was due upon the note, but contend that the burden was upon petitioner to prove what was due and that she failed in that regard. The evidence clearly shows that both Reinbergs owed at least $17,430.25 upon the $25,000 note, but we are of the opinion that a proper investigation of this item will show that both Reinbergs owe upon the note a balance greater than $17,430.25. In view of the sworn answer of John and Minnie Reinberg, heretofore referred to, it is certain that John Reinberg was not financially able to make any payments upon the note, and, strangely, Minnie Reinberg was not questioned as to the source of the money that she claims was paid upon the note. If Minnie Reinberg's vague testimony that her father at some time, not definitely fixed, gave her the $25,000 note is sufficient evidence to prove a gift *inter vivos* no estate would be safe from claims of this character. John Reinberg was not called as a witness in the examination proceedings. In the late case of *Keshner v. Keshner, supra,* the Supreme court said (p. 363) :

''It is well known that courts lend a very unwilling ear to statements by interested persons about what dead men have said; that such evidence is subject to great abuse and that it will be carefully scrutinized as well as considered with all the other evidence in the case. (*Megginson v. Megginson,* 367 Ill. 168, 180; *Fierke v. Elgin City Banking Co.,* 366 id. 66.)''

As to the item mentioned in paragraph 4 of the petition, Minnie Reinberg testified that her father owned a house in Skokie; that he sold it in December, 1942, and received in payment a check from the Chicago Title and Trust Company for $5,117.65 about April 1, 1943; that her father *gave her the check to cash but that her husband cashed it*. It is idle to argue that this evidence proves that Jarmuth made a gift *inter vivos* to Minnie Reinberg of the check or the proceeds from it.

As to the item contained in paragraph 6 of the petition, the trial court's finding "that the other items claimed by Laura Heiby in her petition for citation as belonging to the estate of John Jarmuth, deceased, were given to Minnie Reinberg by the said John Jarmuth during his lifetime and do not belong to the estate," is broad enough to include a finding by the trial court that Jarmuth had given to Minnie Reinberg "certain real estate located on Mozart St., Chicago, Cook County, Illinois." If the trial court intended to so find the evidence does not support such finding.

A careful study of the record creates a strong belief that upon a new trial of the examination proceedings to discover and recover assets of the estate it will be shown that there are other properties, real or personal, belonging to the estate of John Jarmuth which are not mentioned in the petition and which Minnie Reinberg and her husband have converted to their own uses. In the inventory filed by Minnie Reinberg she does not show that there was any cash belonging to the estate and she was not questioned as to the bank account of Jarmuth of which she had joint control—in fact, sole control. Nor was there any examination made as to the affairs of the Mortar Supplies Company that was owned by Jarmuth.

We are satisfied that the examination was not conducted in accordance with the intent and purpose of par. 335, sec. 183 [Jones Ill. Stats. Ann.

110.432] of the Administration Act and that justice requires a new trial of the examination proceedings. Before a hearing is had the trial court should appoint a guardian *ad litem* in accordance with the prayer of the petition, as the record demonstrates that Minnie Reinberg is not a fit person to guard the interests of the estate. We may add that this record presents a clear case where the trial judge acting in pursuance of the powers conferred upon him by par. 337, sec. 185 [Jones Ill. Stats. Ann. 110.434] of the Act should take an active part in the examination to discover and recover assets of the estate.

The judgment order of the Circuit court of Cook county entered October 29, 1945, is reversed *in toto* and the cause is remanded for a new trial.

*Judgment order entered October 29, 1945, reversed in toto and cause remanded for a new trial.*

SULLIVAN, P. J., and FRIEND, J., concur.