**Ellis SOSTRIN and Rebecca Sostrin, Plaintiffs,**

**v.**

**Richard ALTSCHUL, Investors Associates, Inc., a New Jersey Corporation, Defendants.**

**No. 79 C 3762.**

United States District Court, N. D. Illinois, E. D.

July 8, 1980.

John Bickley, Jr., Chicago, Ill., for plaintiffs.

N. A. Giambalvo, Chicago, Ill., for Investors Associates, Inc.

Stephan G. Seliger, Chicago, Ill., for Altschul.

### ORDER

BUA, District Judge.

This cause comes before the court on defendant Investors Associates, Inc.'s motion to dismiss plaintiffs' second amended complaint for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P. For purposes of ruling on this motion the complaint is construed most favorably to the pleader and its allegations are taken as true. Wright & Miller, *Federal Practice and Procedure* : Civil § 1357, p. 594. Exclusive jurisdiction of this securities action lies in the federal courts pursuant to section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. Jurisdiction over the claims founded on state law is based on the principle of pendent jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The first three counts of plaintiffs' second amended complaint are based on alleged violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* The plaintiffs claim that they were defrauded by Richard Altschul, formerly a registered representative of defendant Investors. They claim that Altschul (1) made unauthorized margin purchases of securities for their account, (2) sold stock in their portfolio without authorization to meet margin calls, (3) traded for their account as though he had been given "investment discretion", (4) engaged in "churning", (5) made material misrepresentations and omissions of fact concerning the desirability of investing in the stock of Resorts International, Inc., and (6) omitted to state facts necessary to make statements regarding the use of plaintiffs' portfolio as collateral not misleading. The plaintiffs claim that the above described conduct constitutes violations of sections 10(b) and 15(c)(1) of the Act, 15 U.S.C. § 78j(b) and § 78o (c)(1), as implemented by Rules 10b–5 and 15c–1 of the Securities and Exchange Commission. 17 C.F.R. § 240.-10b–5 and § 240.15c1–2. The liability of Investors is based on the allegation that Altschul committed these violations during the course of his employment by Investors as one of its registered securities brokers. Thus, Investors could be liable to plaintiffs for a breach of its duty to supervise Altschul pursuant to section 20 of the Act. 15 U.S.C. § 78t.

Investors points out that some of Altschul's alleged misrepresentations are prohibited by the rules of the New York Stock Exchange, the National Association of Securities Dealers, and the American Stock Exchange. It argues that plaintiffs have failed to state a claim because "no relief can be granted a claimant upon an illegal subject matter, whether its claim is pleaded in contract or in tort." Defendant's Brief in Support of its Motion to Dismiss, p. 2.

We do not think that this argument can properly be considered on a motion to dismiss. The thrust of the argument is that, as a matter of law, the plaintiff may not allege reliance upon representations made by Altschul that are prohibited by stock exchange or NASD rules. Thus, an essential element of a claim based on Rule 10b–5 is missing and the complaint must be dismissed. In particular, the defendant claims that the complaint discloses that Altschul made three illegal statements. Altschul stated that (1) he would indemnify plaintiffs against any losses to their securities portfolio, (2) he would split the profits made by trading in certain securities in consideration for plaintiffs' permission to "collateralize" their portfolio, and (3) he would purchase stock for plaintiffs without requiring any cash to be advanced for the purchases.

■ Although these statements most certainly evidence violations of exchange and NASD rules,[1] they do not bar plaintiffs' claim at the pleading stage. Each of the rules relied on by defendants were obviously enacted for the protection of investors and to help ensure fair and honest practices in the securities industry. It would be a perverse result indeed if a court were to dismiss a complaint alleging violations of § 10 simply because self-regulatory rules also prohibit the acts constituting the alleged violations. Defendant's argument would require the dismissal of most complaints alleging violations of Rule 10b–5. We do not comprehend how the intentional or reckless violation of self-regulatory rules by an investment firm's broker can be used to shield the investment firm from liability for those violations. Section 20 of the Securities Exchange Act of 1934 explicitly negates such a result.

■ The most that can be said for defendant's argument is that it indicates the existence of a possible defense to the plaintiffs' claims. The defense of *in pari delicto* has, in fact, been raised by Investors in its counter and cross-claims. The complaint alleges that the plaintiffs were defrauded and cannot be said to disclose any illegal or fraudulent conduct on the part of the plaintiffs. It is, of course, open to the defendant to show that plaintiffs have engaged in fraudulent conduct, but this cannot be done by asserting that those who are duped into a transaction violative of self-regulatory rules they may never have heard of, may not recover from those whose conduct is regulated by those rules and who intentionally violate them.

1. Rule 352 of the New York Stock Exchange provides:

"(a) No member associated with a member organization as a member, allied member, registered representative or officer shall guarantee to his employer or to any other creditor carrying a customer's account, the payment of the debit balance in such account.

"(b) No member organization shall guarantee or in any way represent that it will guarantee any customer against loss in any account or on any transaction; and no member, allied member, registered representative or officer shall guarantee or in any way represent that either he or his employer will guarantee any customer against loss in any account or on any transaction.

"(c) No member, member organization, allied member, registered representative or officer shall, directly or indirectly, (i) take or receive or agree to take or receive a share in the profits, (ii) to share in any losses, in any customer's account or of any transaction effected therein. The foregoing will not prohibit the participation of an allied member, a registered representative or an officer in a joint account or investment partnership provided he obtains the prior written consent of his employer."

Rule 390 of the American Stock Exchange states:

"No member or member organization shall guarantee any customer against loss in his account or take or receive directly or indirectly a share in the profits of any customer's account or share in any losses sustained in any such account. For the purposes of this rule the term customer shall not be deemed to include the member of member organization or any joint group or syndicate account with such member or member organization."

The Rules of the National Association of Securities Dealers, Art. III, Sec. 19(e) provides as follows:

"(e) No member or person associated with a member shall guarantee a customer against loss in any securities account of such customer carried by the member or in any securities transaction effected by the member with or for such customer."

■ The defendant's citation of *Tarasi v. Pittsburgh National Bank*, 555 F.2d 1152 (3d Cir. 1977) is apposite. That case discusses whether the defense of *in pari delicto* is appropriately raised in the context of a suit for the enforcement of a regulatory statute. It concludes that such a defense is available in limited circumstances in a securities fraud case. After an analysis of the Supreme Court's decision in *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968), the Third Circuit concluded that "a plaintiff may be deprived of a recovery only if his fault is substantially equal to that of defendant." 555 F.2d at 1161. In the context of liability based on section 20 of the Act, we think that the fault must be equal to that of the controlled rather than the controlling person and even if we are wrong in this conclusion, it would be hard to imagine that the plaintiffs were at fault at all unless the defendant could show that they had something approaching actual notice of the rules upon which defendants rely. We think this narrow application of the common law defense of *in pari delicto* in this regulatory setting is consistent with the Supreme Court's decision in *Perma Life* and the Third Circuit's careful analysis in *Tarasi*. Moreover, we think that the Seventh Circuit's decision in *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033 at 1050–51 (7th Cir. 1977), supports our conclusion. In that case the court stated that the defense that a plaintiff failed to exercise due care or diligence was not available in an intentional fraud case under the Securities Exchange Act of 1934. The court then went on to deal with the issue of the causal connection between the fraud of the defendant and the injury to the plaintiff.[2] In this respect the Seventh Circuit's opinion in *Sunstrand* sheds light on the proper application of the doctrine of *in pari delicto* as a defense to a securities fraud action. The proper analysis would seem to require consideration of the extent to which the allegedly illegal act of the plaintiff in entering into the transaction contributed to the loss suffered by plaintiff. Obviously this depends on the plaintiffs' knowledge of the broker's violation of the rules relied on by Investors, and this question cannot be resolved on the pleadings.

■ As to the remainder of defendant's argument in regard to the deficiencies of plaintiffs' federal claims, we simply note that common law fraud standards are not applied in determining whether a statement is violative of Rule 10b–5. Defendant's argument with regard to plaintiffs' "unsuitability" claim in Count III is rejected as it relates to pleading deficiencies.

■ Finally, we address defendant's motion to dismiss Counts V, VI and VII of the second amended complaint. These counts seek damages for breach of fiduciary duty, negligence, and wilful and wanton conduct respectively and are based on Illinois law. We think that as to Count V the plaintiffs have adequately pleaded a claim for breach of fiduciary duty since the entire complaint deals with a presumptively fiduciary relationship, i. e., the relationship of principal and agent. *In re Jarmuth's Estate*, 329 Ill.App. 619, 70 N.E.2d 336 (1947). Even if we do not treat the broker-client relationship as presumptively fiduciary in nature, under Illinois law, *see e. g., Fey v. Walston & Co., Inc.*, 493 F.2d 1036 at 1049 (7th Cir. 1974), we note that plaintiffs' allegations are sufficient to withstand a motion to dismiss for failure to state a claim upon which relief can be granted. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Roberts v. Sears, Roebuck & Co.*, 573 F.2d 976 at 983 (7th Cir. 1978). Moreover, whether or not Altschul was acting within the scope of his employment may be disputed but it is adequately pleaded.

■ As to Counts VI and VII, we think that plaintiff has adequately pleaded facts constituting negligent and wilful and wanton conduct in the handling of plaintiffs' account. The doctrine of *respondeat supe-*

---

**2.** In this connection we note that Justice White in his concurring opinion in *Perma Life* would have dealt with the defense of *in pari delicto* as presenting a question of causation. 393 U.S. at 143–44, 88 S.Ct. at 1986–87.

490

*rior* is available under these tort theories to hold Altschul's employer liable for its employee's negligent or reckless conduct within the scope of his employment.

Therefore, defendant Investors Associates, Inc.'s motion to dismiss is denied.