WALTER MAHAN *et al.* Appellants, *vs.* FRANKLIN SCHROE-
DER, Exr., Appellee.

*Opinion filed October 26, 1908—Petition stricken Dec. 4, 1908.*

1. HUSBAND AND WIFE—*the husband's possession of mortgage,
properly endorsed by wife, raises presumption that he is the owner.*
Possession by the husband, after the wife's death, of a note and
mortgage formerly the property of the wife and which she has
properly endorsed and assigned to him, raises the presumption that
he is the legal and equitable owner thereof.

2. SAME—*whether husband or wife is the dominant party is a
question of fact.* While it is true that whenever husband and wife
reside together under ordinary conditions confidential relations ex-
ist between them, yet it cannot be said, as a matter of law, that
the husband is the dominant party, and that question is one of fact
under the particular circumstances.

3. TRUSTS—*when wife's alleged declaration of a trust does not
affect husband's rights as assignee of mortgage.* A writing exe-
cuted by the wife, directing her husband to turn over to her exec-
utor a certain note and mortgage in the husband's possession, does
not affect his rights under a subsequent endorsement and assign-
ment of the note and mortgage to him by the wife unless he has
notice of such writing prior to the death of the wife.

4. EVIDENCE—*what is not admissible as tending to show notice
to husband.* Statements by a wife, not in the presence of her hus-
band and not a part of the transaction by which she endorsed and
assigned to him a note and mortgage, are not admissible for the
purpose of showing that the husband held the note and mortgage
upon an express trust.

5. SAME—*what is not an admission that property is held in
trust.* The fact that the defendant in a trover suit brought by his
daughter to recover possession of a note and mortgage formerly
belonging to the defendant's wife but which she had endorsed and
assigned to him before her death pays money to the daughter after
the dismissal of the trover suit and obtains a release of any claim
to the property which she might have under the mother's will is
not an admission by the defendant that he did not have absolute
title, and is not of controlling importance in a subsequent suit by
the daughter's children to have a trust declared in the property.

APPEAL from the Appellate Court for the Third Dis-
trict;—heard in that court on appeal from the Circuit Court
of McLean county; the Hon. C. D. MYERS, Judge, presiding.

On April 3, 1906, Walter Mahan, George Mahan and Fred Mahan, by James Mahan, their next friend, and Edwin Abbott, Herman Mahan and James Mahan, grandchildren of and legatees under the will of Maria Schroeder, deceased, appellants, filed their bill in the circuit court of McLean county against Franklin Schroeder, as executor of the will of Herman Schroeder, deceased, appellee, to establish and enforce a trust with reference to a certain note and mortgage for the principal sum of $11,000 and the coupon notes accompanying the principal note, for an accounting with reference thereto, and for the appointment of a trustee to receive and administer the property according to the terms of a trust declared in the will of said Maria Schroeder, who was the wife of said Herman Schroeder and who pre-deceased him.

The bill, as amended, alleges, among other things, that appellants are the children of America, daughter of Herman and Maria Schroeder, and that Walter Mahan, George Mahan and Fred Mahan are minors; that their mother, who was several times married and is now America Hoffman, has an interest in the subject matter of the suit adverse to the interests of her said children; that Maria Schroeder departed this life on November 27, 1901, leaving a last will and testament, in and by which she bequeathed her property to the children of the said America Hoffman, subject to certain provisions made therein for their mother during her lifetime; that the said will was duly admitted to probate in the county court of McLean county on August 27, 1904, and upon the refusal of the executor named therein to qualify, Homer W. Hall was appointed administrator with the will annexed, and thereafter, on November 1, 1905, the said administrator having reported that he was unable to find any assets of said estate, was discharged by order of the court; that America Hoffman is still living and that complainants are her only surviving children; that on March 7, 1901, the date of the

execution of said will, Maria Schroeder owned and was possessed of one note for the sum of $11,000, due February 26, 1911, with ten coupon interest notes for $577.50 each, and $1000 in cash in the First National Bank of Bloomington, being the proceeds of the sale of a farm to Claus Struve, and also owned and was possessed of a ten-acre tract of land known as "Villa Maria," located in the eastern suburbs of the city of Bloomington, and certain other property not necessary to mention here; that at the time of the execution of said will Maria Schroeder was seventy-four years of age, and thereafter became and was and continued to be sick, weak and feeble of mind and body, and that from time to time during said sickness the said America Hoffman, who was a spendthrift, procured her mother to sign blank checks against the said bank account and deliver them to the said America Hoffman, who filled out and cashed such checks until the said $1000 deposited in said bank was all withdrawn; that said Maria Schroeder, upon learning that said bank account was exhausted, on or about June 6, 1901, negotiated a loan from said bank to defray the expenses of her sickness, and took the note above mentioned, with the interest coupons thereto attached, and deposited it with said bank as collateral security for said loan; that thereafter, while the said Maria Schroeder was in a sick and feeble condition, confined to her bed and greatly worried and troubled over the loss of her bank account and the manner in which it had been withdrawn, her husband, the said Herman Schroeder, a strong-minded, severe man, of whom she stood in great fear, fraudulently contriving to gain possession of said note and coupons and deprive complainants of the benefit thereof, took advantage of the weak and enfeebled condition of his wife, and by threatening, cajoling and representing to her that unless said note and coupons were placed in his custody the said America Hoffman would obtain possession of and squander them, so played upon the fears and weak-

ness of his said wife as to induce her to consent to entrust him with the custody and control of said note and coupons; that in accordance with said arrangement the said Maria Schroeder executed and published her said certain writing stating that said note and coupons were placed in the hands of her husband only as custodian or trustee, and directing that at her death he turn over said note and coupons to her executor or trustee, to be disposed of in accordance with the terms of her will; that Maria Schroeder then and there gave to her said husband a check for the balance of $279.59 remaining to her credit in said bank and executed and delivered to him an assignment of said mortgage securing said note and coupons; that said Herman Schroeder thereupon cashed the said check and paid to the said bank the note for $300 made by his wife, and received and retained possession of said note and coupons which had been deposited with said bank as collateral; that the said Herman Schroeder paid no consideration for said note and coupons, and that Maria Schroeder was led to believe that the sole object of said transaction was to place said note and coupons beyond the reach of America Hoffman during the lifetime of said Maria, and at her death to be turned over to her executor or trustee and disposed of in accordance with the terms of her will; that upon the death of said Maria Schroeder the said husband retained possession of said note and coupons, claiming to be the owner thereof by virtue of said transaction, and refused, and whose executor still does refuse, to account for and turn over said note and coupons, or either of them, to the administrator of the estate of Maria Schroeder for the use and benefit of said estate.

The answer of the defendant denies the material allegations of the bill, and avers that the said Maria Schroeder sold, assigned and delivered the said note and coupons to the said Herman Schroeder as his own property, without any trust or condition whatever. A replication was filed, and on April 27, 1906, the cause was referred to a master

to take proofs and report the same to the court, together with his findings and conclusions thereon. On March 28, 1907, the master filed his report, finding the facts to be substantially as set out in the bill and that complainants were entitled to the relief prayed therein. Objections to the master's report were overruled and ordered to stand as exceptions, and on May 29, 1907, the court entered a decree overruling the report, sustaining the exceptions thereto and dismissing the bill for want of equity. From that decree complainants prayed an appeal to the Appellate Court for the Third District, where the decree of the circuit court was affirmed, and to review the judgment of that court a further appeal is prosecuted by them to this court.

Herman Schroeder (who was known as Dr. Schroeder) and Maria Schroeder were natives of Germany. About the year 1852, after their marriage, they emigrated to this country and settled in Bloomington, where they resided so long as they lived, Mrs. Schroeder's death occurring on November 24, 1901, and that of her husband on April 7, 1905. During their residence in Bloomington they accumulated considerable property. To them were born three children, viz., Franklin, America and Minerva. The latter married one Alfred Schirmer, and died a number of years prior to the death of her mother. The marital relations between Dr. Schroeder and his wife, it seems, were not at all times entirely pleasant. Dr. Schroeder was a man of great force of character, eccentric, frugal, charitable and public spirited. During the year 1887 the difficulties between the doctor and his wife reached such a state that Mrs. Schroeder instituted separate maintenance proceedings against him, which, however, were subsequently dismissed and they again lived together. Upon the dismissal of this suit Dr. Schroeder, on March 26, 1887, conveyed to his wife a one-half interest in certain property owned by him in the city of Bloomington. In addition to this property it appears that Mrs. Schroeder owned a ten-acre tract

of land in the suburbs of that city, known as "Villa Maria."
On January 9, 1901, the property last mentioned was con-
veyed by her to their son, Franklin Schroeder, for his life
and after his death to the heirs of his body.  Mrs. Schroe-
der exchanged her interest in the property deeded her by
her husband for one hundred and sixty acres of land, which
she sold on January 2, 1901, to Claus Struve for $12,160,
one thousand of which was paid to her in cash and in set-
tlement of the balance she received from Claus Struve and
wife a note executed by them for the sum of $11,000, due
February 26, 1911, with interest at the rate of five and one-
fourth per cent per annum, which was evidenced by ten
coupon notes, each for the sum of $577.50, all of said notes
being secured by a mortgage on the land.  What became
of the other $160 does not appear.  The cash received by
her from the sale of this land was deposited to her credit
in the First National Bank of Bloomington.

On January 3, 1901, on account of ill-health, Mrs.
Schroeder was removed from her home to the Brokaw
Hospital, and on January 26, 1901, at her request, she was
taken from there to the St. Joseph Hospital, in Blooming-
ton, where she remained practically all of the time until
her death in the following November.  America was the
favorite child of Mrs. Schroeder, while it seems the doctor,
believing that America was a spendthrift, preferred the son,
Franklin.  Shortly after Mrs. Schroeder had been taken to
the hospital, America, representing to her that she needed
small sums of money from time to time, induced her mother
to sign and give to her checks in blank drawn on her ac-
count at the First National Bank.  She would then fill up
the blanks with larger sums than the mother intended, and
in a short time the daughter had thus withdrawn practically
all of her mother's money from that bank.  When Mrs.
Schroeder learned that her account was exhausted she bor-
rowed $300 from the First National Bank, giving a note
signed by herself and Edwin H. Miner, her attorney, as

surety, and also delivered to the bank the Struve note and coupons as collateral security, and the money thus obtained was placed to her credit in that bank.  In 1896 Herman Schroeder and his wife each executed a will devising and bequeathing all their property to the other, and thereafter, on April 5, 1900, July 25, 1900, December 13, 1900, and on May 7, 1901, Mrs. Schroeder executed other wills, in each giving the greater portion of her estate to her daughter America for life, with remainder to America's children. The four last wills executed by Mrs. Schroeder were placed in the custody of her attorney, all of which, except the last one, were destroyed by him.  On September 2, 1902, following the death of his wife, Dr. Schroeder executed a second will, giving to his daughter America a life interest in certain real estate in the city of Bloomington, with remainder to her son George Mahan, and the balance of his estate to his son, Franklin, and the wife and children of Franklin.

On the evening of June 10, 1901, Mrs. Schroeder was taken from the hospital to her husband's apartments, where she remained during the evening.  On the following morning Mrs. Schroeder sent for her attorney, Mr. Miner, who came to the hospital, to which she had returned, and at her request drew up for her the following instrument, which was then and there executed by her in her husband's absence:

"BLOOMINGTON, ILL., *June 11, 1901.*

"*Dr. Herman Schroeder*—On my death I request that you turn over to my executor named in my will dated March 7, 1901, the note placed in your charge given by Claus Struve and Mary Struve, of $11,000, together with the coupons attached, that he, my executor, may carry out my last will and testament.

"Dated this 11th day of June, 1901.     MARIA SCHROEDER.
Attest: Sister M. Lucy."

The above instrument was then taken by the attorney and attached to Mrs. Schroeder's will dated March 7, 1901. It appears that Mrs. Schroeder was again in her husband's

rooms on the 12th, 13th, 14th and 15th of June, 1901. During that time she signed and delivered to him a check in blank upon the First National Bank, and on the 15th endorsed to him the Struve notes, and on the same day executed and delivered to him an assignment of the mortgage securing the notes. At the same time she delivered the notes and mortgage to him. It does not appear from these endorsements and the assignment that the property was transferred to him in trust. After the blank check had been given to the doctor he went to the bank and drew out $279.59, being the amount of Mrs. Schroeder's account there at the time, and paid off the $300 note held by said bank against her. At this time Mrs. Schroeder and her husband were about seventy-five and eighty years of age, respectively. Mrs. Schroeder was of more than ordinary intelligence and was a capable business woman. She was of an excitable temperament and very nervous. While it appears that there were occasions when her husband mistreated her, yet the evidence tends strongly to show that she respected him, and that while she was in the St. Joseph Hospital she looked forward to his daily visits with great pleasure, and that his treatment of her, at least during that time, was kind and considerate and all that she could have desired. The will of Mrs. Schroeder was kept by Mr. Miner until a few days after her death, when it, together with the paper executed by her on June 11, 1901, was turned over by him to the probate judge of McLean county. Miner was named in the will as executor but refused to qualify, and the will was not filed for probate until August 27, 1904, when it was admitted to probate and Homer W. Hall appointed administrator with the will annexed. Thereafter Hall brought suit against Dr. Schroeder to recover the value of the Struve notes. On March 30, 1905, this suit was dismissed, and on the next day America Hoffman, in consideration of $1000 paid to her by her father, released him, in writing, from any and all claims that she

might have against him on account of any property, money or notes that had belonged to her mother's estate.

It is contended by the appellants that the circuit court erred in not holding (1) that the writing executed by Mrs. Schroeder on June 11, 1901, followed by the delivery of the property to the trustee named therein, constituted an executed, express trust in the property on the terms declared in the will therein referred to; (2) that the defendant failed to prove that he had any title whatever to the property other than as trustee; and (3) that the relation and situation of the husband and wife and the nature and circumstances of the transaction gave rise to an implied or constructive trust.

BRACKEN, YOUNG & PEIRCE, (T. C. KERRICK, of counsel,) for appellants:

Personal chattels are not within the terms of the statute, and trusts in personal property may be declared and proved by parol. Perry on Trusts, sec. 86; *Walden* v. *Karr,* 88 Ill. 49; *Clapp* v. *Emery,* 98 id. 523.

An endorsement of notes may be shown by a separate instrument to have been in trust. *Light* v. *Scott,* 88 Ill. 239; *Padfield* v. *Padfield,* 72 id. 322.

When the property, persons and purposes of a trust are directly and expressly pointed out at the time of its creation it is an express trust. Perry on Trusts, sec. 24; *Yokem* v. *Hicks,* 93 Ill. App. 667.

When the property is transferred so that an interest or estate in it passes to the *cestui que trust,* the trust is executed. *Lynn* v. *Lynn,* 135 Ill. 18; *McCartney* v. *Ridgway,* 160 id. 129; *Chilvers* v. *Race,* 196 id. 71.

If the owner of notes and securities makes a particular disposition of them by will and thereafter delivers them to a third person, to be disposed of upon the donor's death, as directed by the will, it constitutes an express trust in the property on the terms declared in the will, and becomes

executed and irrevocable with the delivery to such third person. *Padfield* v. *Padfield, 72* Ill. 322.

Notice to the trustee and acceptance by him are not essential to the validity of a voluntary trust, as against the settlor or subsequent volunteers claiming under him. *Otis* v. *Beckwith,* 49 Ill. 121; 1 Perry on Trusts, secs. 82, 105; 28 Am. & Eng. Ency. of Law, (2d ed.) secs. 896, 971; *Adams* v. *Adams,* 21 Wall. 185; *Kelly* v. *Parker,* 181 Ill. 49; *Chilvers* v. *Race,* 196 id. 71; *Yokem* v. *Hicks,* 93 Ill. App. 667; *In re Smith's Estate,* 145 Pa. St. 459; *Green* v. *Tulane,* 52 N. J. Eq. 169.

Where a husband receives the capital fund of his wife's separate property there is no presumption that she intended to give it to him, and he is *prima facie* a trustee. 2 Perry on Trusts, sec. 666; *Jackson* v. *Kraft,* 186 Ill. 623; *Patten* v. *Patten,* 75 id. 446; *Tomlinson* v. *Matthews,* 98 id. 178; *Hauk* v. *VanIngen,* 196 id. 20.

Where the evidence shows dominion to have once existed it will be presumed to have continued, and the burden is upon the person afterwards receiving a gift from a person so restrained to show the restraint was removed. *Burt* v. *Quisenberry,* 132 Ill. 385.

Where a woman is sick and her husband induces her to transfer her property to him under the promise that he will save it for her children it is a constructive trust, and he will be held a trustee of the property for the children. *Larmon* v. *Knight,* 140 Ill. 232.

Stone & Oglevee, and Ezra M. Prince, for appellee:

A party cannot be suffered to make evidence for himself by proving his own declarations in his own favor, uttered in the absence of those whose interests are sought to be affected. *Oliphant* v. *Liversidge,* 142 Ill. 166.

Parol evidence to establish a trust must be of such clear and convincing character as to satisfy the mind of the chancellor that the title was taken by the grantee under

236—26

such circumstances that the trust at once resulted. *Francis* v. *Roades,* 146 Ill. 641.

To be a part of the *res gestæ,* a declaration, whether verbal or written, must affect the transaction, and explain or in some way characterize it, and must not be a narrative of past events. *Chicago* v. *McKechney,* 205 Ill. 372.

The declarations of a testator or grantor are not competent to prove undue influence or fraud. *Compher* v. *Browning,* 219 Ill. 444.

In order to establish a trust the evidence must be clear and satisfactory, not alone as to the existence of the trust, but also to its terms and conditions. *Lurie* v. *Sabath,* 208 Ill. 405.

After the death of both parties the evidence should be clear and satisfactory. *Geer* v. *Goudy,* 174 Ill. 514.

Equity will not grant relief where the claim has been allowed to lie dormant for an unreasonable length of time or when the evidence is not very clear in support of the alleged right, especially where no claim has been set up during the lifetime of the trustee but is raked up and charged against his heirs, who may not be supposed to know about it or be able to defend it, as their ancestors might have done. *Strong* v. *Messinger,* 148 Ill. 434.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The principal questions in this case are questions of fact. At the time of the death of Maria Schroeder the notes and mortgage in question were in possession of her husband, Herman Schroeder, properly endorsed and assigned to him. The presumption arises therefrom that he was the legal and equitable owner of the property. For the purpose of overcoming this presumption the appellants sought first to show the existence of an express trust, by the terms of which the husband, upon the death of his wife, was to transfer this property to her executor, to be disposed of in accordance with the terms of her last will.

On June 11, 1901, four days before the execution of the assignment and endorsements, she executed the instrument bearing that date which is set out in the foregoing statement of facts, and her attorney attached it to her last will and testament, which was in his possession for safe keeping. No citation of authority is necessary to support the proposition that the execution of this instrument could not in anywise affect the rights of Herman Schroeder unless notice thereof was brought to him at some time prior to the death of his wife. The only thing in this record that could possibly be regarded as an indication that he had any knowledge, before her death, that she had signed this document, results from the fact that he kept a diary, in which, under the date of June 10, 1901, in his handwriting, appear these words: "Mama made testament to America." The instrument in question was not executed until June 11. It is contended by appellants, however, that an inspection of the entries in the diary under the date line of June 10 and under that of June 11 shows that this entry, although dated June 10, was in fact made on June 11. It will be observed that the language quoted is the recital of a past event. Some years prior thereto Dr. and Mrs. Schroeder had each made a will devising and bequeathing all the property owned by him or her to the other. Thereafter the wife on various occasions made wills making other disposition of her property and in each instance giving to America a substantial interest therein. This recital in the diary may as well have referred to the execution of such a will providing for America as to the execution of the so-called declaration of trust. At any rate, it does not appear that the language in the diary had reference to the document of June 11, 1901. The only other evidence which it is claimed shows the existence of an express trust is proof of statements made by Mrs. Schroeder, not in the presence of her husband and not a part of the transaction by which she transferred to him the mortgage and notes in question. Such statements were in-

competent. There is in this record no competent evidence which fairly tends to show the existence of the express trust averred.

It is then contended that Herman Schroeder was a trustee *ex maleficio;* that he in fact held the property in trust for his wife, and such being the case it would pass under her will. Reliance is placed upon the presumption arising from the existence of fiduciary relations where a gift of property is made by the dependent to the dominant party, and it is contended that the existence of the relation of husband and wife in this case casts upon Dr. Schroeder's executor the burden of proving that the property was conveyed to his testate without the exercise of any undue influence by the husband affecting the volition of the wife. Wherever husband and wife reside together under the ordinary conditions of marriage, confidential relations necessarily exist between them; but in this day of the better education of woman, when she and her property have been very largely emancipated from the control of the husband, it cannot be said, as a matter of law, that he is the dominant and she is the dependent party. Whether or not that be true is a question of fact. Generally the wife is the intellectual equal of the husband, and not infrequently she is his superior. Often she has a business training that fits her to care for property better than he can care for it. Mrs. Schroeder was a woman who was nicely educated. She was refined and of a higher degree of intelligence than her husband. She came of a class which in the land of their nativity was denominated the nobility. Under the laws of that country she rightfully bore the title of baroness. He, on the contrary, sprang from what is there termed plebeian stock. He was always very proud of his wife and very proud of the fact that she had elected to marry him. It is evident from the proof in this record that each had a warm and sincere affection for the other. He, unfortunately, possessed a violent and ungovernable temper and its outbreaks

occasioned the difficulties that arose between them. At the time of the separate maintenance proceeding she secured the transfer to herself, in her individual right, of property sufficient in value and extent to support her independently. Thereafter she employed her own attorney and her own agent and carried on her own business affairs separately and without consulting with her husband.

If, however, it be conceded that a fiduciary relation existed between them and that he was the dominant party, and if it be further conceded that the presumption upon which appellants rely obtains, the question arises, has appellee shown, by a preponderance of evidence, the absence of fraud and undue influence? The assignment and the endorsements, by virtue of which appellee claims, were made four days after the execution of the instrument under which the appellants claim. During the intervening period Mrs. Schroeder had been staying with her husband in his apartments. On the day upon which the property was transferred to the husband, August Boeker, a real estate agent in the city of Bloomington, who had frequently acted for the husband and who had acted for the wife in effecting the sale of the farm to Struve, was summoned to the apartments by telephone. Whether the communication came from the husband or wife does not appear. Boeker is the only witness as to what occurred there and as to what was said by the husband and the wife. From his testimony it is clear that upon his arrival the wife was the active factor in the transaction. She knew what she wanted done and proceeded to have it done without suggestion or assistance from her husband. The notes and mortgage were then in her possession. She at once acquainted Boeker with the events which apparently had completely destroyed her faith in her daughter's financial rectitude, and told him, in substance, that she had determined to transfer the property in question to her husband, and that her husband was to pay a promissory note or notes which she had signed and was

to supply her with all the money that she needed so long as she lived, and to this arrangement Herman Schroeder indicated his assent. Boeker went to his office and drew the assignment of the mortgage and returned to the apartments, where she attached her signature to the assignment, and Boeker, being a notary, took her acknowledgment. In the certificate of acknowledgment it is recited that she acknowledged the execution of the assignment "to be her voluntary act and deed." After the signing, she personally, in the presence of the notary, delivered the notes, mortgage and assignment to her husband.

Charles Park, a physician, attended Mrs. Schroeder after she was in the St. Joseph Hospital, in June, 1901. After the execution of the assignment of the mortgage and the endorsement of the notes she told him what the daughter, America, had done, and then stated that she (Mrs. Schroeder) had given up all she had left to the doctor, (meaning her husband,) trusting him to do what he thought was right; that she had lost confidence in her daughter, America, and for that reason had turned over all she had to her husband; that this was the best she could do under the circumstances. Proof of other similar statements made by Mrs. Schroeder appears.

After the will of the wife had been admitted to probate a suit in trover was brought by her representative against Dr. Schroeder to recover the value of these notes. That suit was pending for some years, and was on March 30, 1905, dismissed. On the next day he paid to the daughter, America, $1000 in full settlement of all claims that she had against him on account of any property which belonged to the mother during her lifetime, particularly specifying the Struve notes, the purpose, as recited, being to transfer to the father all property to which the daughter might be entitled under the will of the mother. This is regarded by appellants as a clear admission by Dr. Schroeder that he did not have the absolute title to the notes in ques-

tion. He was at the time quite ill and died about a week later. America's importunities were no doubt constant and wearing. He possessed the right to buy his peace if he saw fit, and the fact that he made a compromise with the daughter is not controlling in this suit brought by his grand-children.

Proof was offered in reference to Mrs. Schroeder's mental condition, and while it is apparent that her mind was not as strong as formerly, that is readily accounted for by her prolonged illness. It cannot be reasonably contended upon this record that she lacked mental capacity to understand the ordinary business transactions of life at the time of the event out of which this litigation grows.

It is also contended by appellants that the property was transferred to Dr. Schroeder as the result of a form of duress, consequent upon the fact that the wife stood in great fear of him, and that she made the transfer of the property to him for the purpose of pacifying him and preventing a wrong of some kind being visited upon her by him. No presumption aids this contention, and the evidence does not warrant the conclusion that she was so led or induced to convey the property to him.

We are satisfied that the preponderance of the evidence in this record warrants the conclusion that Mrs. Schroeder, feeling a just resentment toward her daughter, acting independently and of her own volition, fearing that she would not live long, transferred the absolute title to this property to her husband without fraud or undue influence on his part, trusting in him to make proper provision for their descendants, precisely as she had trusted him at the time she entered into the arrangement by which each executed a will leaving his or her property to the other.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*