*In re* ESTATE OF DAVID V. M. NELSON, Deceased—(Dorothy H. Nelson, a/k/a DOROTHY N. SAYRE, Respondent-Appellant, *v.* JOSEPHINE NELSON, Executrix of the Estate of David V. M. Nelson, Petitioner-Appellee.)

(No. 54028; ⬛)

First District—March 2, 1971.

*Rehearing denied April 20, 1971.*

Panter, Nelson & Bernfield, of Chicago, (Irwin Panter and Marshall D. Krolick, of counsel,) for appellant.

Chester E. Emanuelson, of Chicago, for appellee.

Mr. PRESIDING JUSTICE LEIGHTON delivered the opinion of the court:

This appeal is to review an order entered in a citation proceeding which was brought to recover shares of stock alleged to be the assets of a decedent's estate. Petitioner, Josephine M. Nelson, executrix, obtained the citation against respondent, Dorothy H. Nelson also known as Dorothy N. Sayre. After hearing evidence, the trial judge ruled in favor of the petitioner. A summary of the facts is necessary in order to understand the contentions of the parties.

David V. M. Nelson departed this life March 15, 1966. Petitioner became the executrix of his estate. On August 16, 1966, she filed a petition for a citation against respondent, alleging that the latter was concealing shares of stock in a street name account with Harris,, Upham & Co., a corporation. Petitioner alleged that the shares belonged to David V. M. Nelson prior to his death; and that respondent was David Nelson's "[f]iduciary agent and trustee * * *" to deliver the shares to him when he requested. On the same day, petitioner applied for a citation against an officer and an employee of Harris, Upham, alleging that they held shares of stock for respondent which belonged to petitioner and the estate. The next day a similar petition was filed against Harris, Upham & Co.

The citations issued. On November 7, 1966, Harris, Upham moved for leave to deposit a number of shares with the clerk. The company alleged it was holding the shares for respondent; that petitioner had demanded them, claiming they were owned by the estate of David V. M. Nelson; and that respondent, also claiming to be the owner, had demanded delivery of the same shares. After hearing the parties, the court entered an order which found that in the name of Dorothy N. Sayre (respondent's married name), Harris, Upham held shares which both petitioner and respondent claimed, causing doubt as to which of them was the owner. Harris, Upham was allowed to deposit the shares with the clerk of the court and was discharged from all liability, except to the person adjudged entitled to them. Petitioner and respondent were ordered to interplead and settle between them their respective claims to the property in question.

The citation against respondent was heard. She was called as a witness. In 21 hearings from October 4, 1966, to December 8, 1967, she was questioned concerning her finances, her dealings with Harris, Upham,

the shares in question and her relations with her father. Seven other witnesses testified. In support of the citation, petitioner gave her version of the events in question. The court admitted 465 exhibits offered by petitioner and 19 by respondent.

From competent evidence in the record, it appears that respondent was the daughter of David V. M. Nelson by a wife he divorced in 1934 when Dorothy was 15 years of age. Shortly after his divorce, he married petitioner. For two or three years, respondent lived with her father and petitioner. She took secretarial training and later became employed in an auto parts company for $12.00 per week. From then until 1941, she worked as a secretary earning no more than $25.00 each week. It was during this period that she met Russell Sayre whom she married in 1947. Between 1941 and 1957, respondent was a secretary. From 1957 until the date of her testimony, she worked for the Hartford Fire Insurance Company earning a salary that began at $360.00 per month.

David Nelson was a building superintendent. He became acquainted with John Gary Barthell, a representative of Harris, Upham & Co., stockbrokers with offices in the same building in which he worked. In 1938, Barthell began buying and selling stocks for David Nelson. From then until his death, Nelson and petitioner had cash accounts with brokerage firms; and the shares they purchased were in joint tenancy, with the right of survivorship.

Respondent was friendly with her father, saw him often and did some secretarial work for him. On May 22, 1942, she purchased a safe deposit box. Sometime later she put in it $5,000.00 she received from her father. According to petitioner, at the beginning of 1942 she and David Nelson "[h]ad my $3,400.00 and $1,600.00 that I had saved of my husband's income; a total of $5,000.00. * * * My husband had turned them over to his daughter. * * * [i]n 1943."

February 10, 1943, respondent, on the advice of her father, saw John Gary Barthell in the offices of Harris, Upham. Although she was without previous experience in the stock market, did not have an account with any brokerage firm nor with any bank, she told Barthell that her father had recommended she open a stock account. She told him she wanted to buy Studebaker stock on margin. After signing a customer's agreement, respondent opened with Harris, Upham margin account No. 904016. With $400.00, she purchased, on margin, 100 shares of Studebaker Corporation stock. Thereafter, until May 17, 1966, on her instructions Harris, Upham bought and sold shares of stock for respondent. Cash or stock dividends and stock splits were to be credited to her account. If the account fell below margin, all demands were to be made on respondent. Only she was liable to Harris, Upham for any loss. From

1943 to 1966 checks were issued to respondent by Harris, Upham: $5,-049.75 on December 30, 1960; $22,100.00 between April 10, 1961, and March 4, 1966. Respondent paid all taxes on income and capital gains from the account. Harris, Upham through its representatives, knew only of respondent as the owner of the account; and it would not have accepted instructions concerning it from any one else. All statements were issued to respondent. Until February 28, 1966, no inquiry or request was ever made by David Nelson or anyone on his behalf of Harris, Upham concerning the shares in the margin account. Although Harris, Upham's representative, John Gary Barthell, saw David Nelson many times between February 1943 and February 1966, they never discussed the shares of stock held for respondent. When account No. 904016 was closed with the deposit in court by Harris, Upham, the shares in it had a value of approximately $117,000.00.

On February 26, 1966, David Nelson and petitioner, respondent and her husband had dinner together. The stock account held for respondent by Harris, Upham was not discussed. February 27, 1966, David Nelson was hospitalized. On February 28 he called Barthell. Later, Barthell told respondent that her father told him in a telephone conversation that her shares with Harris, Upham were his. Respondent said they were not. Barthell agreed with her.

On March 3, 1966, David Nelson asked petitioner to write a document he was going to dictate. With only the two of them present in his hospital room, petitioner took down what David Nelson told her. He said the shares held by Harris, Upham for his daughter were his; that "[e]very dollar of the money that purchased this stock was provided by myself and my wife Josephine M. Nelson. Every transaction and decision was [sic] always made by my order to my daughter * * *. In the event of my death, every stock, and every dollar in this account belongs [sic] to my wife Josephine M. Nelson—not as an inheritance but as the (Survivor), the same as on my other account at Harris, Upham, where my wife Josephine M. Nelson is named as such." To the document was appended a list of 19 companies which petitioner said she first saw in 1952 when her husband brought it home and said to her "This is a list of stocks." The document was signed by Nelson and his signature witnessed by five persons who were called by petitioner at Nelson's request.

Over respondent's objections, this document and petitioner's testimony concerning it were admitted in evidence. In addition, also over respondent's hearsay objections, petitioner was allowed to detail the two telephone calls she said her husband made on February 28: one to Barthell and one to respondent claiming the shares and asking her to bring them to his hospital room. Lawrence Palmer, one of David Nelson's

assistants, was allowed to repeat that Nelson told him he had to call his daughter to buy some stocks for him; that respondent had refused to deliver the shares of stock to him; and in his hospital bed, Nelson said to him, "That's a blankety-blank shame that you can't even trust your own daughter." Dr. George W. Tarry testified that when Nelson was in his office for treatment, they talked about securities; and he told Nelson he kept a margin account in a street name. Nelson told him "[h]e did the same thing." The document prepared by petitioner and the testimony concerning Nelson's oral statements were among the evidence the trial judge considered in reaching his judgment. Without any supportive findings of facts, he entered an order which concluded "[t]hat the assets in question, are the property assets [sic] of the Estate of David V. M. Nelson, Deceased,   *   *   *"

In urging that the order be reversed, respondent contends that (1), the trial court erred in admitting evidence of oral and written statements which David Nelson allegedly made before his death, evidence which did not qualify as exceptions to the hearsay rule and which the court used to reach its decision; and (2), the evidence in the record does not support the conclusion of the trial judge that the corporate shares in margin account No. 904016 were assets of David Nelson's estate.

Petitioner meets respondent's first contention with the argument that she brought a statutory citation proceeding to discover assets of a decedent's estate, one neither at law nor in equity but which, on option, provides for a jury to determine adverse questions of title and rights of property. (*In Re Estate of Baumgarth,* 23 Ill.App.2d 319, 325, 163 N.E.2d 201.) The controlling case, petitioner contends, is *Keshner v. Keshner,* 376 Ill. 354, 360, 33 N.E.2d 877 in which it was held that a citation proceeding is anomalous; and that "[t]he peculiar nature of this kind of suit has a distinct bearing on the decision of this case." From this, petitioner insists that the written document which she said her husband dictated to her, and oral statements attributed to him, were admissible to prove that the shares of stock in controversy were his property.

*Keshner* was a case in which a debtor wrote to his brother, who was also his creditor, telling him that he owned a $7,000.00 U.S. bond which his wife had in her safe deposit box. The letter was received before the debtor's death. In a citation proceeding in which the wife was a respondent, the letter was admitted to show that, contrary to her claim, the bond was not a gift to her; rather, it was an asset of the debtor's estate from which the debt to his brother could be paid. The letter, the court held, was a declaration against the interest of the debtor and admissible against those who claimed through him.

The case before us is different. The document which petitioner used

to prove that the shares in question were assets of the estate was prepared by her, consisted of words she said reflected her husband's thoughts, but was dictated solely for the purpose of enabling petitioner to claim shares of stock which respondent contends belonged to her. In contrast with *Keshner,* decedent did not make the document as a declaration against his interest. Indeed, in its entirety, it was a self-serving declaration. Nor can it be said that this document was "[m]ade in a natural manner and not under circumstances of suspicion." See *Northern Trust Co. v. Moscatelli,* 54 Ill.App.2d 316, 333-334, 203 N.E.2d 447 and 6 Wigmore on Evidence, Sec. 1725 (3rd Ed. 1940).

■■ In *Mahan v. Schroeder,* 236 Ill. 392, 86 N.E. 97, a suit was brought by legatees to enforce a trust on a note and mortgage. A husband claimed that his wife assigned the note and mortgage to him. It was proved that a short time before her death, without any communication concerning it with him, the wife signed a document addressed to the husband telling him that in the event of her death he was to deliver the note and mortgage to her executor. The document was signed, witnessed and attached to the wife's will. In holding that the document was not admissible to prove that the wife had not assigned the note and mortgage to her husband, nor to prove that the husband was trustee of the two instruments, the court said, 236 Ill. 392 at 403:

> "No citation of authority is necessary to support the proposition that the execution of this instrument could not in anywise affect the rights of Herman Schroeder [the husband] unless notice thereof was brought to him at some time prior to the death of his wife."

We conclude that neither the document nor the evidence of oral statements attributed to David Nelson was competent to prove that the shares in controversy were the assets of his estate. Therefore, the trial judge erred in considering this evidence when he made his decision. Before us, in determining whether the order we review can be sustained, the incompetent evidence must be excluded. (*In Re Estate of Vercillo,* 27 Ill. App.2d 151, 169 N.E.2d 364.) Petitioner's theory is that the shares in controversy belonged to David Nelson because in 1942 he turned over to respondent $5,000.00 of his and petitioner's funds with which respondent made the first purchase of stocks on margin on February 10, 1943; that respondent was her father's "fiduciary agent and trustee" with regard to the shares; and that there existed a fiduciary relation between David Nelson and respondent which imposed on her the duty to deliver the shares on his request.

■■ A fiduciary relation is one founded in trust, one in which, if a wrong is done, the remedy against the wrongdoer is the same as that which is available against a trustee on behalf of a *cestui que* trust. The

relation exists when a confidence is reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence. (*Niland v. Kennedy*, 316 Ill. 253, 258, 147 N.E. 117.) Merely blood relationship, such as that of parent and child, does not establish a confidential or fiduciary relation. *Perry v. Wyeth*, 25 Ill.2d 250, 184 N.E.2d 861.

■■■ Fiduciary relations may arise when, as to each other, the parties are attorney and client, principal and agent, guardian and ward or are in like legal relationships. They may also arise from circumstances in which a fiduciary relation exists in fact. For example, where confidence is reposed by one side and domination and influence are exercised by the other, the relation need not be legal; it may be either moral, social, domestic or merely personal. (*In Re Estate of Jarmuth*, 329 Ill.App. 619, 629, 70 N.E.2d 336.) Existence of a fiduciary relation must be shown by proof so clear and convincing, so strong, unequivocal and unmistaking that it leads to only one conclusion. (*Compton v. Compton*, 414 Ill. 149, 157, 111 N.E.2d 109; *Anderson v. Lybeck*, 15 Ill.2d 227, 232, 154 N.E.2d 259.) In a citation proceeding the burden of making this proof is on the petitioner. (*In Re Estate of Bichl*, 65 Ill.App.2d 3, 213 N.E.2d 83.) When applied to the case before us, these principles focus attention on the evidence which supports the order from which this appeal is taken.

Taken as a whole, the record discloses that for nearly 24 years Harris, Upham a stock brokerage house in which David Nelson and petitioner had a joint account, held the shares in question for respondent. She was treated as their owner and neither David Nelson nor anyone for him ever made any inquiry or demand concerning the shares. With the exception of the list attached to petitioner's Exhibit 458 (the document petitioner prepared at her husband's request), there is no evidence that David Nelson ever knew of the shares in account No. 904016. As to the list, respondent admitted it was in her handwriting; but she explained its existence by saying she though she gave it to her father because he was interested in her welfare. In view of other evidence in the record, this was a plausible and reasonable explanation.

Concerning the $5,000.00 which petitioner claims was used to begin purchase of the shares, the only competent evidence in this record is the testimony of the interested parties. Petitioner testified that in the beginning of 1942 she and her husband had saved $5,000.00; and that he turned over that sum to his daughter in 1943. Respondent, on the other hand, testified that in 1942 she opened a safe deposit box in which to put her cash. She admitted that "[m]y father had given me some money * * * it was a considerable sum * * * he gave me the money, he wanted to help me." One of the documents admitted in

evidence is significant. This was petitioner's exhibit 297, an information sheet respondent furnished the safe deposit company when she purchased the box on May 22, 1942. The company asked respondent, "Does any of the property being placed in this box belong to an alien or national?" Her answer was "No." Thus, it appears that long before this controversy, respondent said the money she put in the box did not belong to anyone else.

■■ There is no evidence in this record that respondent was ever required to account to her father or to petitioner for what she did with the $5,000.00. To the contrary, there is evidence that for nearly 24 years respondent took possession of the money, treated it as her own and used some of it to buy shares on margin. We observe from petitioner's exhibits 181 to 186, that in 1943 respondent paid Harris, Upham $1721.00 and in 1944, $400.00 for margin purchase of stocks. There is no evidence that respondent was ever asked to explain to her father or to petitioner what happened to the difference between what she spent and the sum which, according to petitioner, David Nelson "[t]urned * * * over to his daughter in 1943." From petitioner's testimony it appears that it was after her husband's death that she first claimed an interest in the $5,000.00. Courts look with suspicion on claims made to a decedent's property after his death. (See *Estate of Kloss,* 57 Ill.App.2d 118, 207 N.E.2d 92.) Therefore, it must be concluded that in 1942 David Nelson transferred the sum of $5,000.00 to his daughter.

■■ It is said that when a father transfers his property to one of his children, it is presumed that a gift is intended. (*Nolan v. American Tel. & Tel. Co.,* 326 Ill.App. 328, 343-344, 61 N.E.2d 876.) Although the presumption of gift is one that can be rebuted, it is not to be frittered away by mere refinement. (*Baker v. Baker,* 412 Ill. 511, 515, 107 N.E.2d 711.) Whether transfer of property is a gift depends on the intent manifested at the time of the alleged making. (*Varap v. Varap,* 76 Ill.App.2d 402, 414, 222 N.E.2d 77.) What the parties did or said at the time of the transaction is what controls; not what is said later. (*Baker v. Baker, supra; Spina v. Spina,* 372 Ill. 50, 58, 22 N.E.2d 687.) In this case, because the money was a transfer of property from a father to a daughter, respondent was entitled to the presumption that it was a gift. *In re Estate of Toigo,* 107 Ill.App.2d 395, 401, 246 N.E.2d 68.

These doctrines of evidence compel us to conclude that petitioner did not discharge her burden of proof. Clearly, no legal relation existed between respondent and her father which gave rise to a fiduciary relation. There was no trust or confidence responded in respondent by David Nelson; there was no domination of him by her. To prove the trust relation implicit in petitioner's theory, considerably more evidence was

required than was produced. Therefore, the order in which the trial judge concluded that the shares in controversy were assets of David Nelson's estate cannot stand.

The order did more than affect respondent's rights to the shares. It sustained certain of petitioner's objections to an accounting respondent made concerning her dealings with Harris, Upham. As a result, she was ordered to pay to the clerk of the court a net sum of $15,165.14 which she received in checks and dividends during the period 1966-1968. She was disallowed credit for federal income taxes she paid during the years 1947 through 1965 on income she received from the stock account. She was directed to deposit with the clerk the shares of stock of two corporations which petitioner insisted belonged in account No. 904016. Finally, the order required respondent to deposit with the clerk all cash and stock dividends, all stock splits which may come into her possession in the future. These details of the order rest on a conclusion which is not supported by competent evidence. Therefore, appropriate proceedings must be undertaken in the trial court to restore to respondent the shares of stock and monies she has deposited with the clerk.

■■ For these reasons, we reverse the order and remand the cause with directions that the trial court proceed in a manner consistent with this opinion.

Reversed and remanded with directions.

McCORMICK and STAMOS, JJ., concur.